Marlin Cutshall, Petitioner *v.* The Public School Employees' Retirement Board, Respondent.

Submitted on briefs September 15, 1982, to Judges ROGERS, WILLIAMS, JR. and MACPHAIL, sitting as a panel of three.

*N. Christopher Menges,* with him *Heather L. Dorion,* for petitioner.

*Marsha V. Mills,* Assistant Chief Counsel, for respondent.

OPINION BY JUDGE ROGERS, November 23, 1982:

Marlin D. Cutshall was employed as a teacher of the Spanish language in a public school from 1965 until sometime in the early months of 1975, at which latter time he applied for and was granted the disability allowance (now called disability annuity) provided by Section 503(6) of the then applicable Public

School Employees' Retirement Code of 1959, Act of June 1, 1959, P.L. 350, Section 503(6) required that applications for disability be referred to a physician and that they be approved by the Public School Employees' Retirement Board if the physician certified that the applicant was physically or mentally incapacitated for duty. Since he was granted an annuity, we may assume that Mr. Cutshall was so certified. The Public School Employees' Retirement Code of 1959 was repealed and replaced by the Public School Employees' Retirement Code, Act of October 2, 1975, P.L. 298, *as amended*, 24 Pa. C. S. §8101 *et seq.*

Sometime in the early months of 1977, the Retirement Board asked Mr. Cutshall to supply medical evidence of his continued disability. He submitted physicians' reports reporting his condition to be as we later describe it. On July 21, 1977 the Retirement Board summarily discontinued Mr. Cutshall's annuity as of June 1, 1977 on the ground that he had not submitted sufficient evidence of his continued disability.

After July 21, 1977, Mr. Cutshall submitted more physicians' reports and seems to have undergone examination by a physician chosen by the Retirement Board all to no avail. On February 17, 1978 the Retirement Board reaffirmed its decision discontinuing the annuity. Mr. Cutshall filed a petition for review of this decision to this court to which the Retirement Board responded for the first time suggesting that a hearing should be held and requesting that the matter be remanded for that purpose. Our order to this effect was filed April 28, 1978. The hearing before an examiner chosen by the Board was conducted on April 30, 1979. The hearing examiner filed his findings, conclusions and an order deciding the matter against Mr. Cutshall on the merits on December 12, 1979. On March 24, 1980 the Retirement Board by letter to Mr.

Cutshall again decided that his disability annuity was properly discontinued as of June 1, 1977.[1]

Since this case concerns the discontinuance of Mr. Cutshall's disability annuity by action taken after the enactment of the 1975 Public School Employees' Retirement Code, we here reproduce the provision of that Code pertinent to the discontinuance of annuity payments which appears at 24 Pa. C. S. §8505(c) as follows:

Disability annuities.—In every case where the board has received an application for a disability annuity based upon physical or mental incapacity for the performance of the job for which the member is employed, the board shall:
(1) . . . .
(2) Upon the recommendation of the chief medical examiner on the basis of subsequent medical examinations, make a finding of disability or nondisability and, in the case of a finding of nondisability, establish the date of termination of disability and at that time discontinue any annuity payments in excess of any annuity to which he may be otherwise entitled.
. . .

Mr. Cutshall suffers from a variety of visual and ocular problems. First, he has congenital nystagmus —the involuntary oscillation of the eyes, described by witnesses as "jiggling." This condition, being con-

---

[1] The hearing examiner although deciding the matter against Mr. Cutshall on the point of his eligibility, recommended that the annuity be discontinued not from June 1, 1977 but from April 30, 1979, the date of the hearing below, expressing the opinion that the Retirement Board's action discontinuing the annuity without hearing was a denial of procedural due process and violative of a provision of the Administrative Agency Law, now replaced by 2 Pa. C. S. §504, invalidating Commonwealth agency adjudications made without hearings.

genital, is of course longstanding; it is also of an unfavorable prognosis for cure or treatment. Second, he has binocular vision dysfunction, convergence excess and accommodative insufficiency. These cause his eyes not to point and focus at the direction in which he is looking and require, in order to avoid blur and double vision, that he cock his head and peer from the corners of his eyes. This, the physicians agree impairs comfort and mental efficiency in a prolonged learning or reading task. Third, he has an incorrectable reduction of acuity, probably the result of the congenital nystagmus, which interferes with his seeing what is on a blackboard from a distance and with his ability to read newsprint or smaller without a magnifying device. The doctors who submitted reports at Mr. Cutshall's request and the physician chosen by the Board all agree that the reading of books or a school room blackboard for any length of time cause Mr. Cutshall physical and emotional discomfort. None of them disputes the genuineness of Mr. Cutshall's complaints of eye strain and persistent headaches or that during his teaching career he experienced emotional distress not only from the extreme effort he was required to expend just to see but also on account of the difficulty he encountered in maintaining discipline by reason of his being forced, in order to see what was written on a blackboard or a pupil's paper, to peer at the material from very close range. The last mentioned problem was exacerbated when after teaching Spanish, which he could do by oral methods for seven years, he was additionally assigned to English courses which required more blackboard and other reading which, because he was required to do this from short range, prevented him while so engaged from observing the conduct of his young pupils. The doctors all agreed that Mr. Cutshall's physical condition in 1977 and 1978 when they

submitted their reports was in all probability no different from what it had been when he was last teaching and when he went on disability in 1975; that his conditions are stable and will not improve. None of the doctors gave the opinion that Mr. Cutshall was no longer disabled from teaching although the physician engaged by the Retirement Board wrote, "If Mr. Cutshall was able to perform his duties satisfactorily at the time he was first employed, I find no reason why he should not be able to do so at the present time." This statement is advanced by the Board's hearing examiner as evidence that Mr. Cutshall is not now disabled; but it seems to us to suggest the contrary—that since the Retirement Board found him to be physically unable to perform his duties in 1975, there is no reason why he should be able to perform them now.

There are other anomalies in the hearing examiner's brief report. The point is made that the doctors did not report that Mr. Cutshall's vision is affected by his employment, suggesting that eligibility for a disability annuity is conditioned on the disability being work-related. A disability annuity is available to a member of the system with five years of service who before superannuation age becomes mentally or physically incapable of continuing to perform the duties for which he is employed without regard to the cause of his incapacity. 24 Pa. C. S. §8307(c).

The hearing examiner also concluded that Mr. Cutshall had the burden of proving that he remained disabled. This was error. The Retirement Board found Mr. Cutshall to be incapable of performing his teaching duties in 1975. That determination established the then existence of a condition of disability and gave rise to a presumption that the condition continued until the contrary was shown or estab-

lished by the evidence. The case of *Carson v. Real Estate Land Title and Trust Co.*, 109 Pa. Superior Ct. 37, 165 A. 677 (1933) is instructive in this regard. Our research shows *Carson* to be the point of origin of the rule familiar in the workmen's compensation field to the effect that an employer seeking to terminate an award or agreement for compensation on account of disability has the burden of proving that the employee is no longer disabled. Similarly here, it was incumbent on the Retirement Board to come forward with evidence to overcome the presumption that Mr. Cutshall, having been found to be disabled in 1977, continued in that condition. This of course it failed to do, all of the evidence being that Mr. Cutshall's condition remains just as it was when he was granted the disability annuity.

Order reversed; the record is remanded with direction to reinstate the appellant's disability annuity as of June 1, 1977, the deferred payments to bear interest at the legal rate.

ORDER

AND Now, this 23rd day of November, 1982, the order of The Public School Employees' Retirement Board is reversed; the record is remanded with direction to reinstate the appellant's disability annuity as of June 1, 1977, the deferred payments to bear interest at the legal rate.